UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID L. GALLOWAY, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-07-01646 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this appeal from a denial of Plaintiff's application for Social Security disability and disability insurance benefits, and for supplemental security income, are Plaintiff's and Defendant's Motions for Summary Judgment. After considering the parties' filings and the applicable law, the Court finds that Plaintiff's Motion (Doc. No. 11) should be granted to the extent that the ALJ's decision is vacated and the case is remanded. Defendant's Motion (Doc. No. 10) should be denied.

I.  BACKGROUND

Plaintiff David Galloway is a forty-nine year-old male who applied for disability and disability insurance benefits, and for supplemental security income, due to ongoing heart problems.

Plaintiff was last insured for disability benefits under Title II of the Social Security Act through December 31, 2006 (his "last-insured date"). He applied for social security benefits on February 19, 2004, alleging disability beginning on November 1,

2003. His claims were denied on June 10, 2004, and denied again after reconsideration on October 15, 2004. On December 23, 2004, Plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ") to contest the Social Security Administration's decision to deny his applications.

On July 11, 2006, more than eighteen months after Plaintiff's request for a hearing, and more than two years after Plaintiff filed for benefits, a hearing was held before an ALJ. (R. 411-41.) Plaintiff testified at the hearing, as did Tom King, a vocational expert ("VE").[1] No medical expert provided testimony. During the hearing, Plaintiff described his recurring chest pain, shortness of breath, and lung congestion following a stroke and heart failure in 2003. He testified that he is able to take short walks of approximately 100-200 steps each day for exercise, provided that he takes breaks to catch his breath; that he is capable of washing dishes and doing laundry so long as he takes frequent breaks; that he is capable of sitting for approximately two hours, including frequent bathroom breaks; that he can stand for ten to fifteen minutes while doing the dishes; and that he can lift up to twenty pounds, although his doctors have advised him not to lift anything heavier than ten pounds. He also testified that he experiences chest pains even when he is at rest, pains he described as sharp and debilitating, and as lasting for approximately five minutes.

At the conclusion of Plaintiff's testimony, the ALJ offered an oral review of selected medical evidence in the record. (R. 433-35.) The ALJ began by discussing Section 4.02 of the Listing of Medical Impairments (the "Listings"), 20 C.F.R. pt. 404, subpt. p, app. 1 § 4.02, which addresses chronic heart failure, stating, "We've got exhibits

---

[1] Mr. King was appointed to testify by the Social Security Administration. (R. 52).

2

in the file that are going to meet an A criteria [of Listing 4.02], it's the B criteria that we have a little more trouble meeting." (R. 433.)[2] The ALJ then reviewed selected exhibits, noting that Plaintiff had been admitted to the hospital for heart-related problems on multiple occasions, and that Plaintiff's ejection fraction, which measures the amount of blood pumped out of the heart with each beat and which is an element of Listing 4.02's

---

[2] Listing 4.02 reads as follows:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
> A. Medically documented presence of one of the following:
> 1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
> 2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
> AND
> B. Resulting in one of the following:
> 1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or
> 2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or
> 3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:
>   a. Dyspnea, fatigue, palpitations, or chest discomfort; or
>   b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
>   c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>   d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. pt. 404, subpt. p, app. 1 § 4.02.

'A criteria,' had recently been measured as high as at 41% in 2004 but as low as 25-29% in 2005. He did not mention the May 25, 2004 report of Dr. D.P. Sunkara (R. 307) that, as explained below, formed a crucial part of the ALJ's eventual decision. The ALJ concluded with the statement, "I think he's got fairly good records here," by which the ALJ appears to have meant that Plaintiff's allegations of disability were well-founded. (R. 435.)

The VE's testimony concluded the hearing. He testified that Plaintiff had past relevant work experience as a fitter/welder, which he classified as skilled work requiring medium exertion, and as an x-ray radiographer, which he classified as skilled work requiring light exertion. (R. 436.) In response to a hypothetical question from the ALJ, the VE testified that, if Plaintiff were capable of lifting twenty pounds occasionally and ten pounds frequently, sitting or standing for six to eight hours, walking four of eight hours, and had no limitations on his dexterity, Plaintiff would be unable to perform his past work. He would, however, have many jobs available to him in the regional and national economies working on an assembly line, operating a drill press, or working as a lock assembler. In response to a second hypothetical question from the ALJ, the VE further testified that, if Plaintiff were capable of lifting ten pounds occasionally and five pounds frequently, sitting or standing for six to eight hours, walking two of eight hours, and had no limitations on his dexterity, Plaintiff would again be unable to perform his past work, but he would still have many jobs available to him in the regional and national economies working at the sedentary, unskilled level, such as an order clerk, a sorter, or a surveillance monitor. Importantly, in response to a third hypothetical question from the ALJ, the VE testified that, if Plaintiff were capable of all the same tasks described in the

second hypothetical, but he required the frequent breaks that Plaintiff had described in his testimony, Plaintiff would be unable to perform any job in the national economy. (R. 438.)

In a decision issued on August 23, 2006, the ALJ denied Plaintiff's claims for disability and supplemental security income benefits. (R. 21-23.) He found that the claimant suffered from the severe impairments of hemoptysis, cardiomyopathy, chronic obstructive pulmonary disease, and a chronic reticular interstitial pattern, but that these impairments did not meet or equal those described in the Listings. (R. 23.) He further found that Plaintiff had the residual functional capacity ("RFC") to "lift and carry 20 occasionally and 10 pounds frequently, sit or stand about 6 hours in an 8-hour day and walk about 4 hours in an 8-hour day" with no limits on his ability to push and pull, or on his dexterity (R. 23-24), a finding that matched the ALJ's first hypothetical question for the VE described above. In so finding, the ALJ took care to explain that he had given "careful consideration [to] the entire record," and that, while "the medically determinable impairments could reasonably be expected to produce the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (R. 23-24.) Therefore, based on the VE's testimony at the hearing, the ALJ found that while Plaintiff was unable to perform his past relevant work, he possessed skills that were transferable to other occupations with jobs existing in significant numbers in the national economy, such as bench assembler, drill press operator, and lock assembler. (R. 26-28.) Therefore, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the decision, and he denied all of Plaintiff's applications for benefits. (R. 28.)

The Social Security Appeals Council denied review of the ALJ's decision in April, 2007. (R. 5.) Plaintiff filed the instant case in May, 2007, maintaining that the ALJ erred in denying his claim for benefits.

## II.   ANALYSIS

### A.   Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

### B.   Standard of Review

Judicial review of an ALJ's denial of disability benefits is limited to determining "whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). "It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.* (internal quotation marks omitted) (citing *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir. 1973); *Payne v. Weinberger*, 480 F.2d 1006 (5th Cir. 1973)).

### C. Legal Standard

A disability claimant bears the initial burden of proving that he is disabled. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). A person claiming a disability must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, "[a] claimant is eligible for benefits only if the onset of the qualifying medical impairment began on or before the date the claimant was last insured." *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990). In the instant case, Plaintiff bears the burden of demonstrating that a qualifying medical impairment began on or before December 31, 2006.

> The Court evaluates a disability claim via a five-step process, as follows:
>
> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered

disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Villa*, 895 F.2d at 1022). "A finding that a claimant is not disabled at any point in the five-step process is conclusive and terminates the . . . analysis." *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

### D.     Plaintiff's Claims

With respect to Plaintiff's claims, the Court finds that the ALJ erred as a matter of law by failing to consult a medical expert when determining that Plaintiff's ailments are not medically equivalent to the Listings.

#### 1. Consultation of a medical expert

Whether to consult a medical expert is generally a matter left to the discretion of the ALJ. *See, e.g., Haywood v. Sullivan*, 888 F.2d 1463, 1467 (5th Cir. 1989) ("An ALJ requests a [medical expert] to testify when she or he feels it necessary."); *Frank v. Barnhart*, 455 F. Supp. 2d 554, 558 (E.D. Tex. 2006) ("A medical expert's testimony is *required* only in very limited circumstances . . . . Otherwise, the decision whether to utilize a medical expert is discretionary." (emphasis in original)). A medical expert is required, however, when an ALJ must determine whether a claimant's impairments are equivalent in severity to impairments in the Listings. Social Security Ruling 96-6p (1996), 1996 WL 374180 ("[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as

expert opinion evidence and given appropriate weight [before deciding whether a listing is met or equaled]."); *see also Frank*, 455 F. Supp. 2d at 558 & n.3. Moreover, even where consulting a medical expert is discretionary, an ALJ is under an affirmative duty to develop the record fully, and where an ALJ's failure to do so results in prejudice to a claimant, remand is warranted. *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).

### 2. Dr. Sunkara's report

In the instant case, the ALJ relied heavily on the report of Dr. D.P. Sunkara, a consulting physician who examined Plaintiff at the request of the Texas Rehabilitation Commission. (R. 307.) Dr. Sunkara's report finds that Plaintiff's "[m]edical records show very critical illness," but that "[t]here is no evidence of vascular congestion or heart failure." (R. 308-09.) Dr. Sunkara explains this apparent discrepancy between his examination and the medical records by stating, without further explanation, that Plaintiff has made a "remarkable recovery." (R. 308.) In considering these findings, the ALJ appears to have interpreted Dr. Sunkara's finding of "no evidence of vascular congestion or heart failure" as having a temporal limit: the ALJ twice states that Dr. Sunkara had found that Plaintiff showed "no *current* evidence of congestive heart failure or vascular congestion" (R. 25, 26, emphasis added). Importantly, Dr. Sunkara's report offers no explicit finding as to whether Plaintiff's impairments meet or equal the Listings.

Given the ALJ's characterization of the limits of Dr. Sunkara's findings (a characterization with which the Court agrees), and given the fact that Dr. Sunkara makes no finding about whether Plaintiff's impairments meet or equal the Listings, the Court finds that Dr. Sunkara's report was insufficient as a matter of law to dispatch the ALJ's duty to consult a medical expert before finding that Plaintiff's ailments do not "medically

9

equal[]" the Listings. (R. 23.) The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments *meet* the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are *equivalent to* the Listings. *See Frank*, 455 F. Supp. 2d at 558 & n.3. This is presumably because making an equivalency finding requires difficult medical judgments as to the severity of a claimant's ailments, judgments that are greatly assisted by consulting an expert. Dr. Sunkara's report, particularly as interpreted by the ALJ, was insufficient to provide such assistance. The doctor's relevant finding, that Plaintiff showed "no evidence of congestive heart failure or vascular congestion," appears to have been limited to the Plaintiff's condition at the moment of the examination. That finding contradicts the extensive medical history available to Dr. Sunkara at the time, which the doctor himself characterized as showing "very critical illness." Moreover, Dr. Sunkara's report offers no explanation for Plaintiff's "remarkable recovery"—an explanation that any responsible medical expert would have attempted to provide given the medical records available at the time of the examination.

Moreover, Dr. Sunkara could not possibly have considered the copious evidence in the record *postdating* his report that at least suggests, if not shows, that Plaintiff's recovery in May 2004, if any, was short-lived. For instance, in November 2004, Plaintiff was diagnosed with angina pectoris (R. 352); in February 2005, an echocardiogram showed an ejection fraction below 30% (R. 347); in April 2005, Plaintiff was diagnosed with ischemic cardiomyopathy (R. 358); and on at least three other occasions in 2005, doctors' treatment notes appear to indicate signs of congestive heart failure (R. 287, 342, 378). All of these treating physicians' notes came *after* Dr. Sunkara's report and

therefore were never considered by a medical expert. "When an updated medical judgment as to medical equivalence is required at the administrative law judge level [due to additional material medical evidence being received into the record] . . . the administrative law judge must call on a medical expert." SSR 96-6p.

At bottom, Plaintiff's claims turn on difficult medical judgments about the character and severity of Plaintiff's ailments, and the medical evidence in the record provides the key to making those judgments. The Court would hope that an ALJ faced with a case such as this would consult a medical expert simply as a matter of discretion, as such a consultation might very well persuade the ALJ to reach a different result. In any event, in this case, the ALJ was required to determine whether Plaintiff's ailments are medically equivalent to the Listings, and, as a matter of law, that determination requires input from a medical expert. Failing to solicit that input violated the requirements of SSR 96-6p, violated the ALJ's duty to develop the record, and resulted in potential prejudice to Plaintiff.[3]

### III. CONCLUSION

Because the ALJ erred as a matter of law in failing to consult a medical expert, Plaintiff's Motion for Summary Judgment (Doc. No. 11) is **GRANTED** to the extent that the ALJ's decision is **VACATED**. Defendant's Motion for Summary Judgment (Doc. No. 10) is **DENIED**. This case is **REMANDED** for further proceedings not inconsistent with this Memorandum and Order.

**IT IS SO ORDERED.**

---

[3] Because the legal error cited above warrants remand of this case, the Court will not address Plaintiff's other points of error.

**SIGNED** this 23rd day of May, 2008.

                                                KEITH P. ELLISON
                                                UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT**